# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**PHEASANT RUN CONDOMINIUM
HOMES ASSOCIATION, et al.,**
        **Plaintiffs,**

    v.                                                  Case No. 07-C-0082

**CITY OF BROOKFIELD,**
        **Defendant.**

---

## DECISION AND ORDER

Plaintiffs Pheasant Run Condominium Homes Association, Chateau-in-the-Wood Homeowners Association, Inc., Meadow Wood Court Condominium Association, and Wilderness North Condominium Association, Inc. bring this action against defendant, the City of Brookfield ("the City"), pursuant to 42 U.S.C. § 1983, alleging violations of equal protection and due process and asserting supplemental state law claims. I have subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. Before me now are the City's motion for summary judgment and related motions.

### I. BACKGROUND

**A.    Factual Background**

Plaintiffs are associations of condominium owners, and defendant is a Milwaukee suburb. The associations' members are residents of subdivision-style condominium developments, i.e., developments consisting of clusters of buildings on large suburban tracts. Except for containing condominium units rather than single-family homes, the developments resemble suburban subdivisions. The developments also include roads.

However, unlike other roads in the City, which the City owns and maintains, the roads in the subdivision-style condominium developments are owned by the condominium associations, which hire contractors to maintain them and perform tasks such as snow removal. Plaintiffs' claim is that the City has an unwritten policy of requiring developers of subdivision-style condominiums to turn their roads over to the developments' condominium associations, which can assess dues on their members, so that the associations, rather than the City, will have to maintain them. In contrast, the City allows developers of single-family subdivisions to dedicate their roads to the City, which will then maintain them. According to plaintiffs, this alleged policy unconstitutionally discriminates against condominium owners in subdivision-style developments. The City denies that it has such a policy and states that developers of subdivision-style condominiums prefer to keep the roads private because it enables them to avoid the City's density and setback requirements and build more units.

**B.    Issue Background**

Others besides condominium owners have complained about the disparate provision of municipal services. For decades, writers have characterized the problem as one involving "residential community associations" ("RCAs"). See generally Robert J. Dilger, Neighborhood Politics: Residential Community Associations in American Government (1992); Advisory Commission on Intergovernmental Relations ("ACIR"), Residential Community Associations: Private Governments in the Intergovernmental System? (1989); Brett W. Hawkins, Stephen L. Percy & Steven R. Montreal, Residential Community Associations and the American Intergovernmental System, 27:3 Publius 61 (1997); see also http://en.wikipedia.org/wiki/Main_Page (enter "homeowners' association"

into search field and view result) (last visited Sept. 25, 2008). RCAs are mandatory-membership organizations associated with three types of planned developments: condominiums, cooperatives, and master-planned developments, which include certain types of single-family subdivisions and townhouse projects. ACIR, supra, at 3. Property owners in these types of developments must be members of associations and pay dues to the associations to fund a range of services. Id.

RCAs provide both benefits and costs to members, developers and municipalities. One writer describes the benefits as follows:

> The developers are able to produce more attractive and marketable homes, which include a livable environment, not just a house. The RCA also gives the developer options to cut costs, work within a more flexible regulatory framework, and exit the project without a continuing responsibility for maintenance and management.
>
> The purchasers and homeowners receive a range of choices in communities and service packages. They also benefit from any cost savings that the developer is able to capture through regulatory flexibility. Thus, goals for meeting the needs of special market niches and keeping housing affordable are facilitated by RCA development.
>
> Local government gets developments that are significantly self-financing, often have additional amenities, and add to the local tax base. At the same time, RCA development relieves local government and, thereby, existing taxpayers of much of the responsibility for financing infrastructure and services.

ACIR, supra, at 4-5. The writer also describes the costs:

> Service separation and double taxation. Typically, the RCA provides its own facilities and services at its own expense. However, this arrangement usually does not relieve individual association members of local property tax liability for their own units or the association of liability for property taxes on the common properties. Therefore, the associations and their members sometimes pay twice for some services that taxpayers outside the association's boundaries get from local government and pay for only once.
> . . . .

3

> Excluded public services. Because the property within the RCA boundaries is private, including the streets, public officials often do not enter to provide certain normal services of government without explicit permission of owners. This fact typically excludes government from providing routine police patrols, trash collection, animal control, and the like.

Id. at 5.

"Most local government officials . . . view the formation of RCAs as well as the contracting out of various public services to private companies as pragmatic responses to local fiscal stress." Dilger, supra, at 87. Members of RCAs may also prefer to contract for services rather than rely on local governments because they then decide the level of service that they will receive and how much they will pay. For example, members of an RCA might decide to pay a premium for prompt snow-removal service, while other municipal residents must wait until the municipality clears its major arterials. See id. at 14. However, many members of RCAs believe that having to pay for services that municipalities provide to others without charge is unfair because they pay the same property taxes as other property owners. They view having to pay local property taxes and RCA fees as double taxation. ACIR, supra, at 17-18; Dilger, supra, at 28, 102-03.

## II. DISCUSSION

Plaintiffs represent members of RCAs who believe that having to pay for road maintenance through both property taxes and association dues constitutes double taxation. They argue that the City has a policy of treating subdivision-style condominium owners differently than other property owners and that the policy violates their Fourteenth Amendment rights to equal protection and due process[1] as well as Wis. Stat. § 703.27,

---

[1] Plaintiffs also bring these claims under the Wisconsin Constitution. I need not discuss the state constitutional claims separately because the analysis of them is the same

4

which prohibits discrimination against condominiums. The City denies that it has such a policy. However, I need not determine whether the City has such a policy because even assuming that it does, as discussed below, the policy would not be unconstitutional. Therefore, plaintiffs' § 1983 claims fail. Further, for reasons also discussed below, I decline to exercise supplemental jurisdiction over plaintiffs' state statutory claim.

**A.    Constitutional Claims**

   **1.    Equal Protection**

Plaintiffs argue that the City's alleged policy of denying certain services to subdivision-style condominiums deprives the unit owners therein of equal protection. However, the alleged policy "does not distinguish on the basis of, for example, race or gender" or any other suspect classification. Fitzgerald v. Racing Ass'n of Cent. Iowa, 539 U.S. 103, 107 (2003). Rather, it distinguishes between subdivision-style condominiums and other forms of residential property, and the "form of [property] ownership . . . is not among the 'suspect' classifications recognized by the courts." Beauclerc Lakes Condominium. Ass'n v. City of Jacksonville, 115 F.3d 934, 935 (11th Cir. 1997). Further, the City's alleged policy does not implicate a fundamental right. Property owners have no fundamental right to snow removal or street maintenance. See id. at 935 (stating that a condominium association has no fundamental right to free garbage collection); see also Ramsgate Court Townhome Ass'n v. West Chester Borough, 313 F.3d 157, 160 (3d Cir. 2002) (same); Goldstein v. City of Chicago, 504 F.2d 989, 991 (7th Cir. 1974) (same); Carter v. Lamb, 872 F. Supp. 784, 790 (D. Nev. 1995) (stating that snow removal is not

---

as that of the federal claims.

5

a fundamental right). Because the City's alleged policy does not implicate a suspect classification or a fundamental right, I review it under the rational basis standard. Fitzgerald, 539 U.S. at 107; RJB Props., Inc. v. Bd. of Educ. of City of Chicago, 468 F.3d 1005, 1009 (7th Cir. 2006) (stating that because "plaintiff's claim does not involve a fundamental right or a suspect classification, the Court evaluates the claim under rational basis review").

A court applying rational basis review must determine whether a conceivably rational relationship exists between the distinction in question and a legitimate governmental interest. Lamers Dairy, Inc. v. U.S. Dep't of Agric., 379 F.3d 466, 473 (7th Cir. 2004). In other words, "'[g]overnmental action only fails rational basis scrutiny if no sound reason for the action can be hypothesized.'" Lauth v. McCollum, 424 F.3d 631, 634 (7th Cir. 2005) (quoting Lamers Dairy, Inc., 379 F.3d at 473). In the present case, plaintiffs defeat their equal protection argument when they acknowledge that the reason the City allegedly distinguishes between subdivision-style condominium developments and other forms of residential property is to save money. Plaintiffs repeatedly state that the City's policy is "money motivated" (see, e.g., Br. in Opp'n at 2, 16), and point out that by requiring condominium associations to pay for their own services, the City conserves tax dollars. However, conserving tax dollars is a legitimate governmental interest. Ramsgate Court, 313 F.3d at 160 (finding municipality's disparate treatment of property owners justified by economic considerations); Beauclerc Lakes, 115 F.3d at 935-36 (holding that municipality's decision to save money by requiring condominium associations to pay for their own waste removal even though municipality provided free

6

waste removal to other property owners was rationally related to legitimate governmental interest); Goldstein, 504 F.2d at 992 (same).

The City's alleged policy is not illegitimate even if it disproportionately burdens a certain class of taxpayers. Fitzgerald, 539 U.S. at 108 ("[T]he Constitution grants legislators, not courts, broad authority (within the bounds of rationality) to decide whom they wish to help with their tax laws and how much help those laws ought to provide."). Here, as plaintiffs recognize, the City's reason for placing a heavier financial burden on the owners of subdivision-style condominiums is that, unlike single-family homes, such condominiums come with associations with the means to provide their own services.[2] Plaintiffs do not suggest that the City discriminates against them because of some irrational animus toward the condominium form of ownership. Thus, even if I assume that the City distinguishes between condominiums and other forms of property ownership, it has a rational basis for doing so and does not violate the equal protection clause.

### 2. Due Process

Plaintiffs also claim that the City's alleged policy deprives them of substantive and procedural due process. However, their argument is nearly incomprehensible. They assert that "the substantive due process violation is the taking of state-created interests

---

[2] Pls.' Br. in Opp'n at 26 ("The obvious reason [behind the City's alleged policy] is that condominium associations can use their condominium assessments to pay for the municipal burdens which are delegated to them by the city."); Pls.' Prop. Findings of Fact ("PFOF") ¶ 4 ("It is the plaintiff associations' power to assess its members which enables the association to pay for private streets and to perform the other services imposed on the association by the City."); id. ¶ 29 (City will provide street maintenance to developments that do not have a "cohesive assessing entity."); id. ¶ 31 ("When a residential development has assessing power, the City utilizes it and requires those residents to maintain their own roads.").

to be treated like other homeowners from plaintiffs; it is also the indirect double taxation on the plaintiffs, who must pay property taxes and also assessments for municipal services provided to others with their tax dollars." (Br. in Opp'n at 21.) However, the "interest to be treated like other homeowners" is not a liberty or property interest and is therefore not protected by due process. Plaintiffs' argument merely restates their equal protection claim. Further, plaintiffs cite no authority for the proposition that the due process clause prohibits "indirect double taxation" of condominium residents, and I am aware of none. As explained above, governments can distribute tax burdens as they see fit, so long as they make rational distinctions. See Fitzgerald, 539 U.S. at 108. Therefore, plaintiffs' substantive due process claim fails.

Plaintiffs' procedural due process claim seems to be that the City did not give the owners of condominium units the opportunity to participate in its negotiations with the developers concerning whether the roads would be publicly or privately owned. However, every unit owner either knew or should have known before purchasing his or her condominium that the development included private roads and that the association bore the responsibility for maintaining them. Owners did not have to purchase units and, having done so, cannot reasonably assert that it is unfair to hold them to their bargains.

B.   **State Statutory Claim**

Although the Constitution affords no special protection for condominium owners, Wisconsin state law does. Wis. Stat. § 703.27 provides:

> **703.27 Zoning and building regulations. (1)** A zoning or other land use ordinance or regulations may not prohibit the condominium form of ownership or impose any requirements upon a condominium that it would not impose if the development were under a different form of ownership. No provision of a state or building code may be applied differently to a

8

building in a condominium than it would be applied if the building were under a different form of ownership unless the different application is expressly permitted in that provision and the different application is reasonably related to the nature of condominium ownership. No subdivision ordinance may apply to any condominium unless the ordinance is, by its express terms, applicable to condominiums and the application is reasonably related to the nature of condominium ownership.

**(2)** No county, city, or other jurisdiction may enact any law, ordinance, or regulation that would impose a greater burden or restriction on a condominium or provide a lower level of services to a condominium than would be imposed or provided if the condominium were under a different form of ownership.

Plaintiffs first contend that § 703.27 strengthens their equal protection argument. They assert that the effect of the statute is to bar the City from distinguishing between condominiums and other types of property even if a rational basis exists for doing so. However, plaintiffs cite no authority for the proposition that a state statute can, for constitutional purposes, create a suspect classification or a fundamental right or make an otherwise legitimate governmental interest illegitimate, and I am aware of none. Indeed, the Supreme Court has cautioned against "transform[ing] many ordinary violations of city or state law into violations of the Constitution." Vill. Of Willowbrook v. Olech, 528 U.S. 562, 565 (2000) (Breyer, J., concurring). Therefore, § 703.27 lends no weight to plaintiffs' constitutional claims.

Because plaintiffs' constitutional claims fail, I must determine whether to exercise supplemental jurisdiction over their state statutory claim. Section 1367(c) authorizes me to decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

9

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Based on subsections (1) and (3) above, I decline to exercise jurisdiction over plaintiff's state law claim.

Most importantly, such claim raises novel and complex questions of Wisconsin law. I have found no Wisconsin case interpreting § 703.27, and it is unclear if it applies to the present case. Section 703.27 bars a municipality from enacting a "law, ordinance, or regulation" that discriminates against condominiums, but in the present case, the City has at most an unwritten policy that discriminates against condominiums, not a law, ordinance or regulation. Perhaps the statute should be read to bar unwritten discriminatory policies, but Wisconsin courts should decide that question. It is also unclear whether the City's alleged policy does discriminate against the condominium "form of ownership" as proscribed by § 703.27(2). As discussed, plaintiffs' theory is that the City forces subdivision-style condominiums to pay for their own services because they have RCAs, which have the means to do so. However, as also discussed, other types of developments also have RCAs. ACIR, <u>supra</u>, at 3. Perhaps, § 703.27(2) should be interpreted as barring discrimination against all forms of ownership that generate RCAs, but that question too should be left to Wisconsin courts.[3]

---

[3] Actually, under plaintiffs' theory, the City does not discriminate against forms of ownership that generate RCAs but against property owners who have the means to provide their own services and reduce the City's costs. Thus, the City might require the owner of a high-density apartment complex to pay waste-removal costs because the owner can incorporate such costs into the rent it charges tenants, whereas owners of single-family homes cannot. It is unlikely that in enacting § 703.27(2), the Wisconsin legislature

10

Finally, § 1367(c) counsels against the exercise of jurisdiction over plaintiffs' state law claim, Sanchez & Daniels v. Koresko, 503 F.3d 610, 615 (7th Cir. 2007) (stating that when they have dismissed all federal law claims before trial, district courts should generally dismiss state law claims without prejudice), and I need not retain jurisdiction for reasons of efficiency, see Williams Elecs. Games, Inc. v. Garrity, 479 F.3d 904, 906 (7th Cir. 2007) (explaining that court should retain jurisdiction over state claims even when federal claims are dismissed if doing so would further judicial economy). Neither the court nor the parties have committed substantial resources to the state claim, and if plaintiffs refile it in state court and such court determines that they have a viable legal theory under § 703.27, the parties can reuse the discovery taken in the present case. See 16 James Wm. Moore, Moore's Federal Practice § 106.66[3][a], at 106-93 (3d ed. 2008) (stating that the fact that parties expended resources on discovery is not a reason to retain supplemental jurisdiction, especially when discovery is reusable in state court).

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED**. Plaintiffs' federal claims are dismissed with prejudice. Plaintiffs' state law claims are dismissed pursuant to 28 U.S.C. § 1367(c) without prejudice to renewal in state court.

---

intended to prohibit this form of discrimination. The legislature probably intended to bar local governments from discouraging condominium development based on an irrational fear of the condominium form of ownership. This seems to have been a real problem when condominiums began gaining popularity. See Richard A. Lehman, Are condominium projects subject to local land use codes?, 55 Wis. B. Bull. 19, 19 (1982) ("In earlier days, some communities looked on the condominium with fear and barriers were quickly erected."). But again, this is a matter to be resolved by Wisconsin courts.

11

**IT IS FURTHER ORDERED** that the Wisconsin Realtors Association's motion to file an amicus curiae brief is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant's motions to strike (Docket Entries 41 & 48) are **DENIED** as **MOOT**.

**FINALLY, IT IS ORDERED** that the clerk enter final judgment.

Dated at Milwaukee, Wisconsin, this 30 day of September, 2008.

/s_____
LYNN ADELMAN
District Judge